**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**JAMES MELEAR**                                                                      **PLAINTIFF**

**VERSUS**                                      **CIVIL ACTION NO. 1:03cv674JMR**

**HARRISON COUNTY; HARRISON COUNTY
SHERIFF, GEORGE PAYNE, Individually and in
His Official Capacity; and JOHN DOES A-Z WHO
ARE UNKNOWN TO THE PLAINTIFFS AT THIS
TIME BUT ARE IN THE CHAIN OF COMMAND
FOR THE HARRISON COUNTY SHERIFF'S
DEPARTMENT; Individually and in their Official
Capacities**                                                         **DEFENDANTS**

**MEMORANDUM OPINION**

This matter is before the Court on the Motion [72-1, later updated by 148-1] of defendant George Payne, Jr. ("Payne") for Summary Judgment[1], which is accompanied by his Memorandum in Support [149-1]. Defendant Harrison County filed a Joinder in the Motion [156-1] on May 26, 2005. The plaintiff filed his Response [174-1] on June 10, 2005 and, later, on July 1, 2005, filed a Supplement to his Response [185-1], with a Memorandum in Support [187-1]. On June 16, 2005, Payne filed his Reply to Plaintiff's Response [177-1] and a Motion to Strike Plaintiff's Evidentiary Exhibits "A" through "F"[175-1] with a Memorandum in Support [176-1]. The plaintiff filed his Response in Opposition to the defendant's Motion to Strike [180-1] on June 17, 2005; to which Defendant Payne filed a Reply [182-1] on June 23, 2005. Defendant Harrison County filed its own Motion for Summary Judgment [188-1] and Memorandum in Support [189-1] on July 26, 2005; to which the plaintiff filed a Response [192-1] on August 9, 2005. Therefore, the Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record,

---

[1]Sheriff Payne's Motion for Summary Judgment also moves the Court for Qualified Immunity in his individual capacity.

along with the applicable law, finds that the defendants' Motions [72-1, 148-1, 188-1] for Summary Judgment are well taken, and should be granted.

## STATEMENT OF CASE

Plaintiff, a former Harrison County deputy, was initially arrested on February 9, 2001, pursuant to a five (5) count indictment for various felony child molestation charges involving conduct with a child under the age of fourteen (14) years. The following day on February 10, 2001, Plaintiff bonded out of jail but was returned in September 2001 when his bond was revoked pursuant to a motion by the District Attorney. *See* Circuit Court Order, attached as Exhibit "B" to Payne's Motion for Summary Judgment and Qualified Immunity. Plaintiff was housed in the D-F medical section of the Harrison County Adult Detention Center ("HCADC") continuously after his initial arrest and after his return in September 2001 due to numerous health problems that predated his incarceration. Plaintiff had a medical history of a heart transplant and was receiving immunosuppressant drugs, which had induced hypertension, and was being medicated for depression. He also had a history of back surgery and chronic renal failure. *See* Deposition of Plaintiff, attached as Exhibit "C" to Payne's Motion for Summary Judgment and Qualified Immunity.

Early in the morning of December 31, 2001, a dispute over a breakfast tray occurred between Plaintiff and James Gibson ("Gibson"), another inmate housed in the D-F section of the HCADC, in which Gibson threw coffee in Plaintiff's face. *See* Deposition of Plaintiff, attached as Exhibit "C" to Payne's Motion for Summary Judgment and Qualified Immunity. At the time, Plaintiff's bunk was located right next to Gibson's, and was approximately 10 to 15 feet away from a desk where a D-F cell block officer was assigned and sat, on the floor of the day room section of the block, among

the inmates. *See id*. D-F was the only section of the jail that had an officer assigned to sit in the section with the inmates 24 hours a day. Sergeant Kenneth Rogers, the off-going shift supervisor that morning, testified that Gibson was being housed on the day room floor of D-F section because he was on suicide watch. *See* Deposition of Sgt. Kenneth Rogers, attached as Exhibit "H" to Payne's Motion for Summary Judgment and Qualified Immunity. Shortly after this incident, HCADC personnel moved Gibson's bunk to the other end of the room, about eighty (80) feet away from Plaintiff's bunk. *See* Deposition of Plaintiff, attached as Exhibit "C" to Payne's Motion for Summary Judgment and Qualified Immunity. Prior to this, Gibson and Plaintiff had bunked next to each other for over three months. *See Id*.

The incident which is the subject of this suit occurred between 11:00 p.m. and 12:00 midnight on December 31, 2001. Shortly before the incident occurred, the D-F officer departed the section to assist other officers in conducting the 11:00 p.m. inmate head count. Although the D-F officer is assigned to remain in the D-F section, Sergeant Bobby McLemore ("McLemore"), the shift supervisor on duty, instructed the D-F watch officer to assist with the head count due to the manpower shortage on New Year's Eve. *See* Deposition of Bobby McLemore, attached as Exhibit "G" to Payne's Motion for Summary Judgment and Qualified Immunity. According to McLemore, the watch officer departed D-F section at approximately 11:08 p.m. and McLemore was advised by radio at approximately 11:15 p.m. that an altercation was occurring in the D-F section. McLemore responded and entered section D-F about two minutes later. Several officers were already present and had handcuffed Gibson. Nurses arrived on the scene at approximately 11:18 p.m. to begin treating Plaintiff. *See Id*.

While the watch officer was gone from the D-F section, Plaintiff walked from his bunk over to the microwave, which was across the room and close to Gibson's new bunk. Gibson engaged Plaintiff in conversation and wanted to know if Plaintiff was going to press charges for the coffee incident earlier that day. *See* Deposition of Plaintiff, attached as Exhibit "C" to Payne's Motion for Summary Judgment and Qualified Immunity. Plaintiff testified that at this point, he turned his back to Gibson and Gibson immediately attacked him from behind, hitting him in the head, and instantly removed Plaintiff's eyeballs. *See Id.* Gibson "had his hands in my face, and got my eyeballs out and pulled them over my back and had his knees in my back, and had me arched over backwards pulling me back with my head backwards with my eyeballs. And then somehow or another, he got me turned upside down and holding my feet and legs like posthole diggers beating my head in the floor." *See* Exhibit "O" of the Plaintiff's Response to Motion for Qualified Immunity and Summary Judgment on Behalf of Defendant George Payne, Jr. Plaintiff was blinded by this attack. Plaintiff died, presumably from his other medical conditions, on July 21, 2004.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97. "The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or

unnecessary will not be counted." *Id.* at 248.  Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion.  *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986).  To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986).  To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact.  *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights.  Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States.  *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights.  Section 1983 was intended to protect rights protected by federal law.  *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

## ANALYSIS

Harrison County Sheriff George Payne, Jr., in his Motion for Summary Judgment [148-1], contends that the plaintiff's assertions, even if true, would only amount to single, episodic acts, and, therefore, could not support liability under section 1983. He further contends that because the municipality for which he worked maintains no custom or policy of depriving individuals of their constitutional rights, a claim of municipal liability under section 1983 must fail. Payne also claims that the plaintiff's individual capacity claims are subject to a qualified immunity defense and that Plaintiff has failed to allege facts which would support a finding that the defendant's conduct was not objectively reasonable under the circumstances.

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are

necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. "The unconstitutional conduct [alleged by the plaintiff] must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id*. at 578. *See Bennet v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984).

The three requirements for municipal liability detailed above are necessary in order to distinguish between isolated violations committed by local employees and those violations which may be committed by the government itself. *Piotrowski*, 237 F.3d at 578. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Id.* at 578. In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted.").

In the present case, the plaintiff's main allegation is that Payne is liable under section 1983, through his authority as the Sheriff of Harrison County, because of alleged inadequate staffing, training, and supervision at the HCADC. The Court notes that plaintiff's official capacity claim

against Payne is, in reality, a claim against the office which he occupied at the time of the alleged incidents and, ultimately, Harrison County. To the extent the plaintiff brings this action against Payne in his official capacity, he must establish a constitutional violation and in addition must satisfy the test for official capacity liability. This test requires the plaintiff to establish three things: first, that the Sheriff's office had an official policy, practice or custom which would subject it to section 1983 liability; second, that the official policy is linked to the constitutional violation(s); and third that the official policy reflects the Sheriff's office's deliberate indifference to that injury. See *Lawson v. Dallas County*, 286 F.3d 257, 263 (5th Cir. 2002).

The plaintiff relies heavily on evidence concerning a consent decree involving the HCADC to support his section 1983 claims. This evidence is attached to the plaintiff's Response [174-1] as Exhibits "A" through "F." These exhibits do not comport with Federal Rule of Civil Procedure 56(e) because they are all either unsworn pleadings or excerpts of reports that were prepared in litigation of a separate case and do not reflect any nexus to the case before the Court. *See* Fed. R. Civ. P. 56(e). More importantly, the utilization of these exhibits would be contrary to the Fifth Circuit rationale in *Green v. McKaskle*, 788 F.2d 1116 (5th Cir. 1986), that consent decrees are remedial measures and that the mere existence or a violation of a remedial court order will not support section 1983 liability without independent grounds for a constitutional claim. Undoubtably, the public policy against the use of the consent decree in individual lawsuits was a motivating factor in the county's willingness to enter into a consent decree with the Justice Department. The Court finds this evidence is inadmissible and must be stricken from the plaintiff's Response [174-1]. The plaintiff provides no other evidence of an official Sheriff's office policy or deliberate indifference.

The Court finds that, even if taken as true, the plaintiff's allegations amount to single, isolated incidents of negligent conduct. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. The Court notes that the official policy of the HCADC was to always have an officer present in the D-F section. In the case sub judice, an officer temporarily left his duty station to assist in the head count. At best, such an assertion amounts to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claims against Payne. Further, this Court finds that because there existed no policy or custom which was the moving force behind any alleged constitutional violation, there exists no basis for plaintiff's claims against Harrison County. The plaintiff attempts to base his argument on evidence from an unrelated inadmissible consent decree action is insufficient to establish an issue of liability.

The Fifth Circuit has held that a "state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm ... but responded with deliberate indifference to that risk." *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996). In other words, for liability to attach to a jail official, the plaintiff must show that the official had subjective knowledge of a substantial risk of serious harm to the inmate, but responded with deliberate indifference to that risk. *Id.* at 649. The plaintiff has not offered any evidence that would create a genuine issue of material fact as to whether the defendants possessed subjective knowledge of a substantial risk of serious harm, or that Payne responded with deliberate indifference to that risk. The plaintiff has provided no evidence that Payne responded with deliberate indifference to risks to Melear with regards to his situation with Gibson. The two had bunked next

to one another for three months, seemingly without incident. After the minor altercation, which occurred earlier in the day, the deputy had taken appropriate action by separating the bunks of the two men by about eighty (80) feet. Deliberate indifference is the subjective intent to cause harm, and it cannot be inferred from a jail official's failure to act reasonably. It is not the same as negligence. *Id.* at 648. "Negligent conduct by a prison official cannot be the basis for a due process claim." *Id.* at 646.

Further, with regard to the individual capacity claims raised against Payne, the Court finds that he is entitled to qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged the violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). If a violation of a right has been alleged, then it must be determined whether the defendant's conduct was objectively reasonable. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare*, 135 F.3d at 327. In the case at hand, the Court finds that plaintiff has not presented any evidence sufficient to allege a violation of a clearly established constitutional right or any unreasonable conduct on the part of the defendants. The plaintiff has also failed to provide any evidence that the actions of the officials rose to the level of deliberate indifference. Thus, the Court finds that Payne is entitled to qualified immunity.

Alternatively, after Plaintiff's death on July 21, 2004, the defendants served a suggestion of death on all counsel of record, the Clerk of Court and the plaintiff's successors. After a party's death, the deceased party has not later than (90) ninety days to file a motion for substitution. Fed. R. Civ. P. 25(a)(1). This time period expired on December 14, 2004. The plaintiff did not file a motion for an extension of time before he filed his Motion [74-1] to Substitute. The plaintiff did not

file a Motion [74-1] to Substitute until February 3, 2005, which included a request for a time extension of 30 days, and filed a Motion [76-1] to Amend the Motion to Substitute on February 10, 2005.  These motions were filed after the expiration of the time period provided for by Federal Rule of Civil Procedure 25(a)(1).  The plaintiff's argument for excusable neglect is not well-taken and Defendants' Motion [72-1] for Summary Judgment should also be granted on this ground.

## CONCLUSION

For the foregoing reasons, this Court is of the opinion Payne's Motion [175-1] to Strike Plaintiff's Evidentiary Exhibits "A" through "F" should be granted.  Furthermore, this Court is of the opinion that the plaintiff has failed to meet his burden of demonstrating any genuine issues of material fact which would preclude summary judgment on his section 1983 claim.  Therefore, this Court finds that Payne's Motion [72-1, 148-1] for Summary Judgment should be granted, and that all claims against George Payne, Jr. should be dismissed with prejudice, both in his individual and official capacities.  The Court further finds that Harrison County's Motion [188-1] for Summary Judgment should be granted, and that all claims against Harrison County should be dismissed with prejudice.

This the  29th  day of November, 2005.

*s/ John M. Roper, Sr.*
CHIEF UNITED STATES MAGISTRATE JUDGE